# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

| | |
|---|---|
| MAZEN ALMOUKDAD, individually and on behalf of all others similarly situated, | Case No. 1:25-cv-461 |
| v. | Jury Trial Demanded |
| RELIANSE OSUNA NM LLC, RELIANSE GLOBAL LLC, HARESH SURTI | Class & Collective Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Relianse Osuna NM LLC (Relianse Osuna), Relianse Global LLC (Relianse Global), and Haresh Surti (Surti) (together, Defendants) failed to pay Mazen Almoukdad (Almoukdad), and other workers like him, minimum wages as required by the Fair Labor Standards Act (FLSA) and the New Mexico Minimum Wage Act (NMMWA).

2. Almoukdad brings this class and collective action on behalf of himself and all other workers misclassified as independent contractors by Defendants.

3. This class and collective action seeks to recover the unpaid minimum wages and other damages owed to these workers.

### JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

5. The Court has supplemental jurisdiction over the NMMWA claims under 28 U.S.C. § 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District.

7. Mazen Almoukdad worked for the Defendants in this District.

8. Defendant Relianse Osuna NM LLC is headquartered in this District.

9. The Defendants have availed themselves to the jurisdiction of this Court.

10. The Defendants maintain business operations in this District, including in Albuquerque, New Mexico.

## THE PARTIES

11. Almoukdad worked for the Defendants as an Operations Manager from approximately April 2023 until January 2024.

12. Throughout his employment, Defendants classified Almoukdad as an independent contractor.

13. His consent to be a party plaintiff is attached as **Exhibit A**.

14. Almoukdad represents a class and collective of similarly situated co-workers.

15. First, Almoukdad brings this action on behalf of himself and all other similarly situated workers misclassified as independent contractors.

16. The FLSA collective of similarly situated workers consists of:

**All workers employed by or performing work on behalf of Defendants and classified as independent contractors during the past three years (the "FLSA Collective Members").**

17. Second, Almoukdad represents a class of similarly situated workers under the NMMWA pursuant to Federal Rule of Civil Procedure 23.

18. The NMMWA Class is defined as:

**All workers employed by or performing work on behalf of the Defendants in New Mexico and classified as independent contractors (the "New Mexico Class Members").**

19. Collectively, the FLSA Collective Members and New Mexico Class Members are referred to as the Relianse Global Contractors.

20. Defendant Relianse Osuna NM LLC is a New Mexico limited liability company doing business throughout New Mexico.

21. Defendant Relianse Osuna NM LLC may be served through its registered agent, Ketankumar N. Sheth, 4441 Osuna Road NE, 4441 Osuna Road NE, Albuquerque, NM 87109.

22. Defendant Relianse Global LLC is a Texas limited liability company doing business throughout the United States.

23. Defendant Relianse Global LLC may be served through its registered agent, Haresh Surti, 400 Redhead Court, McKinney, Texas 75070.

24. Defendant Haresh Surti is a Texas resident.

25. Defendant Surti may be served at his Texas residence, 400 Redhead Court, McKinney, Texas 75070, or wherever he may be found.

## COVERAGE UNDER THE FLSA

26. For at least the past three years, the Defendants have been employers within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

27. For at least the past three years, the Defendants have been part of an enterprise within the meaning of section 3(r) of the FLSA. 29 U.S.C. § 203(r).

28. For at least the past three years, the Defendants have been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

29. The Defendants have and have had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials such as construction equipment, cell phones, laptops, and hand tools that have been moved in or produced for commerce by any person.

30. The Defendants have and have had an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

31. For at least the past three years, Almoukdad and the Relianse Global Contractors were engaged in commerce or in the production of goods for commerce.

32. The Defendants treated Almoukdad (and indeed all their Relianse Global Contractors that it classified as independent contractors) as employees and uniformly dictated the pay practices to which Almoukdad and the other Relianse Global Contractors (including so-called "independent contractors") were subjected.

33. The Defendants' misclassification of Almoukdad and other Relianse Global Contractors as an independent contractor does not alter its status as an employer for purposes of the class and collective action.

## FACTS

34. The Defendants are an investment management company that hires contractors to perform constructions on their properties, including hotels, throughout the United States, including in Montana, New Mexico, South Dakota, and Texas.

35. To complete their business objectives, the Defendants hire personnel to perform the necessary construction work.

36. Over the past three years, the Defendants employed dozens of individuals – including Almoukdad – as Operations Managers, Construction Workers, Painters, and Plumbers (or similar positions) in several states.

37. While exact job titles and job duties may differ, these Relianse Global Contractors are subjected to the same illegal pay practice for similar work.

38. For example, the Defendants employed Almoukdad as an Operations Manager from approximately April 2023 until January 2024.

39. Throughout this time, the Defendants classified Almoukdad as an independent contractor.

40. During the final month of his tenure, Defendants failed to pay Almoukdad minimum wage.

41. The work Almoukdad performed was an essential part of the Defendants' core business.

42. During Almoukdad's employment with the Defendants while he was classified as an independent contractor, the Defendants exercised control over all aspects of his job.

43. The Defendants did not require any substantial investment by Almoukdad for him to perform the work required of him.

44. The Defendants determined Almoukdad's opportunity for profit and loss.

45. Indeed, the Defendants controlled all the significant or meaningful aspects of the job duties performed by Almoukdad.

46. The Defendants controlled the hours and locations Almoukdad worked, the tools he used, and the rate of pay he received.

47. The Defendants controlled all aspects of Almoukdad's job activities by enforcing mandatory compliance with the Defendants' policies and procedures.

48. He worked on the Defendants' job sites and utilized equipment and software provided by the Defendants to perform his job duties on the Defendants' behalf.

49. Almoukdad did not provide the equipment he used on a day-to-day basis.

50. The Defendants made the large capital investments in buildings, machines, drilling equipment, personnel, tools, and supplied in the business in which Almoukdad worked.

51. Almoukdad did not incur operating expenses like rent, payroll, and marketing.

52. Almoukdad was economically dependent on the Defendants during his employment.

53. The Defendants directly determined Almoukdad's opportunity for profit and loss.

54. Almoukdad's earnings were based on the number of days or weeks the Defendants scheduled him to work.

55. Very little skill, training, or initiative was required of Almoukdad to perform his job duties.

56. Almoukdad performed routine duties that were largely dictated by the Defendants.

57. The daily and weekly activities of the Relianse Global Contractors were routine and largely governed by standardized plans, procedures, and checklists created by the Defendants.

58. Virtually every job function was pre-determined by the Defendants, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

59. The Relianse Global Contractors were prohibited from varying their job duties outside of the pre-determined parameters.

60. Moreover, the job functions of the Relianse Global Contractors were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

61. The Relianse Global Contractors also worked similar hours and were denied minimum wages for all hours worked as a result of the same illegal pay practice.

62. The Defendants' policy of failing to pay its independent contractors, including Almoukdad, minimum wages violates the FLSA because these workers are, for FLSA purposes, non-exempt employees.

63. These Relianse Global Contractors carry out the hands-on, day-to-day production work of the Defendants.

64. Based on information and belief, Haresh Surti is a member of Relianse Osuna NM LLC.

65. Based on information and belief, Haresh Surti is a member of Relianse Global LLC.

66. During the relevant time period, Surti maintained operational control over San Antonio Security.

67. Surti had the power to hire Almoukdad.

68. In fact, Surti hired Almoukdad.

69. Surti had the power to hire the Relianse Global Contractors.

70. Surti had the power to fire Almoukdad.

71. Surti had the power to fire the Relianse Global Contractors.

72. Surti had the power to decide Almoukdad's rate of pay.

73. In fact, Surti decided Almoukdad's rate of pay.

74. Surti had the power to decide the Relianse Global Contractors' rates of pay.

75. Surti had the power to discipline Almoukdad.

76. Surti had the power to discipline the Relianse Global Contractors.

77. Surti decided to classify Almoukdad as an independent contractor.

78. Surti decided to pay Almoukdad straight time for minimum wages.

79. Surti decided to classify the Relianse Global Contractors as independent contractors.

80. Surti decided to pay the Relianse Global Contractors straight time for minimum wages.

81. Surti maintained Almoukdad's employment records.

82. Surti maintained the Relianse Global Contractors' employment records.

83. Therefore, Surti and San Antonio Security jointly employed Almoukdad and the Relianse Global Contractors.

84. Because Almoukdad and the other Relianse Global Contractors were misclassified as independent contractors, the Defendants owes them minimum wages for all hours worked.

85. Despite knowing the FLSA and NMMWA's requirements, the Defendants failed to pay Almoukdad and the Relianse Global Contractors minimum wages for hours worked.

### FLSA VIOLATIONS

86. Almoukdad incorporates the preceding paragraphs by reference.

87. As set forth herein, the Defendants violated the FLSA by failing to pay Almoukdad and the Class Members minimum wages for all hours worked. 29 U.S.C. § 206.

88. The Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Day Rate Worker' minimum wages for all hours worked.

89. The Defendants' failure to pay minimum wages to these employees was neither reasonable, nor was the decision not to pay minimum wages made in good faith.

90. Accordingly, Almoukdad and all those who are similarly situated are entitled to minimum wages plus liquidated damages, attorney's fees, and costs.

### NMMWA VIOLATIONS

91. Almoukdad brings this claim under the NMMWA as a Rule 23 class action.

92. The conduct alleged violates the NMMWA (NMSA § 50-4-22).

93. At all relevant times, the Defendants was subject to the requirements of the NMMWA.

94. At all relevant times, the Defendants employed Almoukdad and each Class Member with New Mexico state law claims as an "employee" within the meaning of the NMMWA.

95. The NMMWA requires employers like the Defendants to pay employees minimum wages for all hours worked under the NMMWA.

96. The Defendants had a policy and practice of misclassifying Almoukdad and each member of the New Mexico class as exempt and failing to pay these workers minimum wages for all hours worked.

97. Almoukdad and each member of the New Mexico Class seek owe them unpaid minimum wages for all hours worked, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

98. Almoukdad and each member of the New Mexico Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by the Defendants, as provided by the NMMWA.

99. The improper pay practices at issue were part of a continuing course of conduct, entitling Almoukdad and New Mexico Class Members to recover for all such violations, regardless of the date they occurred.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

100. Almoukdad incorporates all previous paragraphs and alleges that the illegal pay practices the Defendants imposed on them were likewise imposed on the members of the class.

101. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the NMMWA.

102. Dozens of other individuals who worked with Almoukdad indicated they were improperly classified as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

103. The Defendants employed dozens of Relianse Global Contractors across Montana, New Mexico, South Dakota, and Texas. As a result, joinder of their individual claims is impracticable, and a class and collective action serves the interests of judicial economy.

104. Based on his experiences and tenure with the Defendants, Almoukdad is aware that

the Defendants' illegal practices were imposed on other Relianse Global Contractors.

105. The Defendants used day rate contractors across the United States.

106. The Relianse Global Contractors (including the subset that makes up the NMMWA Class) were all improperly classified as contractors and not afforded minimum wages compensation for all hours worked.

107. The Defendants are "employers" of Almoukdad and the Relianse Global Contractors.

108. The Defendants' failure to pay minimum wages for all hours worked result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Relianse Global Contractors.

109. Almoukdad's experiences are therefore typical of the experiences of the Relianse Global Contractors.

110. The specific job titles or precise job locations of the Relianse Global Contractors do not prevent class or collective treatment.

111. Almoukdad has no interests contrary to, or in conflict with, the members of the class.

112. Like all the Relianse Global Contractors, Almoukdad has an interest in obtaining the unpaid minimum wages for all hours worked owed under state and/or federal law.

113. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

114. Absent this action, many members of the class likely will not obtain redress of their injuries and the Defendants will reap the unjust benefits of violating the FLSA and the NMMWA.

115. Furthermore, even if some of the members of the class could afford individual litigation against the Defendants, it would be unduly burdensome to the judicial system.

116. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

117. The questions of law and fact common to each of the members of the class predominate over any questions affecting solely the individual members.

118. Among the common questions of law and fact are:

    (a) Whether the Defendants employed the members of the class within the meaning of the FLSA and the NMMWA;

    (b) Whether the members of the class were improperly classified as contractors;

    (c) Whether the Defendants' decision to classify the members of the class was made in good faith;

    (d) Whether the Defendants' decision to not pay minimum wages to the members of the class was made in good faith;

    (e) Whether the Defendants' violation of the FLSA and NMMWA were willful; and

    (f) Whether the Defendants' illegal pay practices were applied uniformly to the Relianse Global Contractors.

119. Almoukdad's claims are typical of the claims of the other Relianse Global Contractors.

120. All Relianse Global Contractors, including Almoukdad, sustained damages arising out of the Defendants' illegal and uniform employment policy.

121. Almoukdad knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a class or a collective action.

122. Even if the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

### JURY DEMAND

123. Almoukdad demands a trial by jury.

**RELIEF SOUGHT**

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

(a) For an order allowing this action to proceed as a FLSA collective action and directing notice to the class;

(b) For an order pursuant to section 16(b) of the FLSA finding the Defendants liable for all unpaid minimum wages for all hours worked and an equal amount of liquidated damages;

(c) For an order designating the NMMWA class as a class action pursuant to FED. R. CIV. P. 23;

(d) For an order finding the Defendants liable for all unpaid minimum wages for all hours worked owed under NMMWA at the highest available rates allowed by law;

(e) For an order appointing Almoukdad and his counsel to represent the interests of the federal collective and the New Mexico Class;

(f) For an order awarding Almoukdad and the Relianse Global Contractors their costs;

(g) For an order awarding Almoukdad and the Relianse Global Contractors their attorneys' fees;

(h) For an order awarding Almoukdad and the Relianse Global Contractors pre- and post-judgment interest at the highest rates allowed by law; and

(i) For an order granting such other and further relief as may be necessary and appropriate.

Date: May 16, 2025.                    Respectfully submitted,

*/s/ Carl A. Fitz*
**Carl A. Fitz**
Texas Bar No. 24105863
**FITZ LAW PLLC**
3730 Kirby Drive, Ste. 1200
Houston, Texas 77098
(713) 766-4000
carl@fitz.legal

**ATTORNEY IN CHARGE FOR ALMOUKDAD**